**Roberto E. MENDOZA, Plaintiff,**

v.

**SSC & B LINTAS, NEW YORK, Defendant.**

**No. 90 Civ. 0709 (RWS).**

United States District Court, S.D. New York.

Aug. 11, 1992.

Noah A. Kinigstein, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison by Colleen McMahon, David Jaroslaw, of counsel), New York City, for defendant.

## OPINION

SWEET, District Judge.

Defendant SSC & B Lintas, New York ("Lintas") moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P. dismissing plaintiff Roberto E. Mendoza's ("Mendoza") national origin discrimination claims under 42 U.S.C. § 1981, asserted in Counts II and V of the complaint, on the grounds that they are barred by the doctrine of *res judicata* and for an order pursuant to Rule 12(b)(6), Fed.R.Civ.P. dismissing the defamation claim asserted in Count III for fail-

ure to state a claim upon which relief can be granted. For the following reasons, the motion is granted.

*The Parties*

Mendoza is an individual born in Mexico who is now a citizen of the United States of America. Both of Mendoza's parents are of Mexican extraction. The complaint does not assert Mendoza's state citizenship or place of residence. Mendoza was employed by Lintas from February 1984 until August 1989 when he was terminated.

Lintas is a corporation in the business of advertising. Lintas is incorporated and licensed to do business in the State of New York. Lintas has a principle place of business at One Dag Hammerskjold Plaza in New York City. Lintas is the successor in interest to Lintas, New York, an advertising concern which in February 1984 hired Mendoza as a paste-up artist.

*Prior Proceedings*

The complaint was filed on January 29, 1992 (the "Complaint"). The Complaint asserts claims against Lintas under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991; 42 U.S.C. § 1981 ("§ 1981"); and for defamation and intentional interference with contract. Lintas moved to dismiss the § 1981 and defamation claims pursuant to Rule 12(b)(6), Fed.R.Civ.P. on March 13, 1992. On April 29, 1992, the return date of the motion to dismiss, the court converted the motion with respect to the § 1981 claims to one for summary judgment and enlarged the time for the parties to submit additional relevant documents. Following further submissions by the parties, oral argument was heard on June 3, 1992, at which time the motion was considered fully submitted.

*The Facts*

In this action, Mendoza alleges that Lintas discriminated against him on the basis of his national origin in violation of § 1981 and Title VII (Counts I, III and V). Additionally, Mendoza claims that Lintas's allegedly discriminatory discharge has compelled him to libel himself in applying for employment (Claim II) and that Lintas in-

tentionally interfered with his right to contract with another employer (Counts IV).

The following facts are undisputed except where otherwise noted.

In 1984, Mendoza applied for the position of assistant art director ("AAD") with Lintas. He was interviewed by Marianne Millar ("Millar"), Vice President of Creative Services for Lintas, and was ultimately hired by Lintas in February of 1984 as a paste-up artist. Mendoza claims that he was assured that he would be promoted to the position of AAD within one year.

Mendoza was not promoted within that time period (although he was subsequently promoted to AAD in April 1985, *see* Jaroslaw Supp.Aff.Ex. 4, at 2), although he claims that other less qualified Caucasian individuals with less seniority, including a Kenneth Evans ("Evans") were. Comp. ¶¶ 6–7.

On January 28, 1985, Mendoza filed an administrative complaint with the New York State Division of Human Rights (the "SDHR") alleging that by failing to promote him to the position of AAD, Lintas had discriminated against him on the basis of his Hispanic national origin in violation of Title VII (the "SDHR Complaint"). Comp.Ex.C. The SDHR Complaint specifically cited Evans's promotion on January 5, 1985 as "the most recent promotion[ ]" of a Caucasian individual with less seniority. *Id.* ¶ 4. The DHR Complaint was also filed with the Equal Employment Opportunity Commission ("EEOC").

On October 30, 1987, the DHR issued a "Determination and Order after Investigation" dismissing the DHR Complaint, concluding that "there is 'NO PROBABLE CAUSE to believe that [Lintas] has ... engaged in or is ... engaging in the unlawful discriminatory practice complained of.' " Jaroslaw Supp.Aff.Ex. 2, at 1. This finding was explicitly based on the lack of facts sufficient to support the SDHR Complaint's allegations of unlawful discrimination. *See id.* at 1–2. The order stated that the SDHR had considered the promotion of Evans over Mendoza, and concluded that "[a]fter reviewing the work and experience of both candidates, [Lintas] judged the sec-

ond candidate more suited for the position." *See id.* On January 5, 1988, the EEOC adopted the SDHR's findings and conclusion of no probable cause and notified Mendoza of his right to sue within 90 days. *See id.* Ex. 3. Mendoza neither appealed the determinations of either agency nor acted on this right to sue.

Mendoza alleges that, after he filed the SDHR Complaint, Lintas began to retaliate against him by failing to review him for annual raises, "future career possibilities" or promotion. Comp. ¶ 9. The Complaint also alleges that he performed the work of Art Director ("AD") but was paid at the rate of an AAD. *Id.* ¶ 11.

On May 18, 1988, Mendoza filed a second complaint with the SDHR (the "Second SDHR Complaint"), this time charging that Lintas had discriminated against him on the basis of national origin and as a result of "systematic retaliat[ion]" by failing to consider him for or grant him pay raises or promotions for almost two years. *See* Jaroslaw Supp.Aff.Ex. 4. Appended as exhibits to the Second SDHR Complaint were various Lintas inter-office memoranda praising the work of advertising teams of which Mendoza was a member. *See id.*

On June 7, 1988, the SDHR advised Lintas that it was conducting an investigation of the Second SDHR Complaint, and directed that Lintas submit specified documents and information within 15 days. *See id.* Ex. 5. Lintas's response to this request was received by the SDHR on August 31, 1988. *See id.* Ex. 6. In its response, Lintas unequivocally denied Mendoza's charges of national origin discrimination and retaliation, addressing the allegations of the Second SDHR Complaint in detail and maintaining that the failure to promote or grant Mendoza pay raises was due to his performance. *See id.* In support of its position, Lintas submitted an affidavit from Millar, who affirmed, among other things, that the failure to promote Mendoza was an "artistic judgment based on the respective art portfolios of [Mendoza and Evans]." *Id.* at Millar Aff. (Ex. A) ¶ Conclusion). Lintas also supplied the documents and information requested by the SDHR in the June 7, 1988 notice. *Id.* at Exs. B–E. Additionally, Lintas submitted the affidavits of Marian Monshen ("Monshen"), Senior Vice President and Group Creative Director for Lintas and Michael Shallette ("Shallette"), Executive Vice President and Executive Creative Director for Lintas. Monshen characterized Mendoza's work for her as, among other negative adjectives, "sloppy, incomplete and not thought through," and affirmed that he had problems complying with direct requests and had a high rate of absenteeism. *Id.* at Monshen Aff. (post-Ex. E) at 2–5. Monshen "completely den[ied]" that Mendoza's national origin influenced her evaluation of his work in any way. Shallette affirmed that Mendoza had not received a raise or promotion because his performance did not merit such awards. *Id.* at Shallette Aff. (post-Ex. E) at 2. Shallette further specified various shortcomings, such as "[a]s far as creative ideas are concerned, when Mr. Mendoza misses, he misses by a lot," and that "[m]uch of the hand-drawn work that he has produced has been barely presentable." *Id.* at 3.

In or about August 1989, Mendoza was terminated from his position at Lintas. Comp. ¶ 15. According to the Complaint, no reason was given for his termination.

On September 28, 1989, the SDHR notified Lintas to appear for a conference on October 25, 1989 in connection with the investigation of the Second SDHR Complaint. *See id.* Ex. 8. This notification also directed Lintas to provide additional documents and information before October 19, 1989. Lintas's time for providing the requested documents and information was adjourned to November 15, 1989 and the conference was adjourned to November 22, 1989. *See id.* Ex. 9.

On November 15, 1989, Lintas responded to the supplemental request for information and documents and also supplied affidavits of numerous Lintas officers and employees. Each of the affiants affirmed that specific deficiencies in Mendoza's performance accounted for his failure to receive a promotion or a raise. *See id.* Ex. 11.

Prior to the November 22 conference, Mendoza requested that the SDHR subpoena several people to testify on his behalf at the conference, one of whom was a Dan Weiss ("Weiss"), a co-worker. *See* Mendoza Aff. ¶ 2. Mendoza also requested that Shallette and Millar be subpoenaed so that he could cross-examine them on the affidavits they had supplied in response to the Second SDHR Complaint. *See id.* ¶ 3. Shallette and Millar were not subpoenaed. *See id.*

Rosalyn Y. Spriggs ("Spriggs"), Human Rights Specialist at the SDHR, conducted a two-party factfinding conference on November 22, 1989. Present at the conference were Mendoza and his wife; counsel for Lintas; and Lintas employees Ira Chynsky ("Chynsky"), Laurie Ellen Murphy ("Murphy") and June Manton ("Manton"). *See* Jaroslaw Supp.Aff.Ex. 12. Mendoza was not represented by counsel. *See id.* The "Notice of Conference" sent to Mendoza specifically advises that: "You may bring a lawyer if you so desire, but it is not necessary for you to do so. However, the other side has also been so advised." *Id.* Ex. E.

Spriggs's memorandum of the conference establishes that Chynsky, Lintas's Senior Vice President and Director of Creative Services Administration, testified as to Lintas's criteria for selection for raises and promotions, the rating system used for raises and promotions and the merit evaluation process that took place with respect to Mendoza. *See* Jaroslaw Supp.Aff.Ex. 12. The memorandum evidences that, in addition to Chynsky, Mendoza, Murphy, Manton and Lawrence Jacobs ("Jacobs"), attorney for Lintas, testified and that Mendoza and Spriggs questioned the witnesses. *See id.; see also id.* Ex. 22 (letter from Mendoza to SDHR referring to questions he asked of Chynsky at November 22, 1989 conference). Weiss did not appear at the conference, but on January 9, 1990 submitted written responses to written questions posed by the SDHR at Mendoza's request. *See id.* Ex. 14.

On December 15, 1989, Spriggs transmitted to Lintas Mendoza's "Rebuttal to Lintas Response dated Nov. 15, 1989," further submissions Mendoza had made to the SDHR and responses to various affidavits submitted on behalf of Lintas. *See id.* Ex. 13.

Mendoza made further submissions to the SDHR. A follow-up conference was scheduled for January 10, 1990 to review these supplemental submissions to and communications with the SDHR. *See id.* Ex. 16. Apparently, the conference was rescheduled for January 24, 1990 and Mendoza made further submissions and requested that the personnel files of certain Lintas employees be provided to the SDHR. *See id.* Ex. 17. On January 16, 1990, Lintas provided those files, *see id.* Ex. 18, and on January 23, 1990 submitted additional requested information relating to Lintas employees. *See id.* Ex. 19. On February 2 and 8, 1990, Lintas responded to Mendoza's supplemental submissions to the SDHR. *See id.* Exs. 20 & 21. The SDHR received further submissions from Mendoza on March 11 and 12 1991, to which Lintas responded on March 15 and 25, 1991. *See id.* Exs. 22–25. On April 4, 1991, the SDHR requested further documents and information from Lintas, to which Lintas responded on April 16, 1991. Despite the scheduling of the follow-up conference, Mendoza's uncontested affidavit testimony is that no further conferences were held.

On September 30, 1991, the SDHR issued a Determination and Order after Investigation with respect to the Second SDHR Complaint. It concluded that:

there is NO PROBABLE CAUSE to believe that the said respondent has engaged or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

In Respondent's assessment of Complainant's performance, they claim he is marginally qualified as an Assistant Director....

Respondent also states that raises are based on merit and supervisor's recommendations. It appears that in the case of Complainant his supervisors did not recommend him for raises....

Based on the foregoing analysis and the record as a whole it appears that Respondent was exercising its artistic discretion when they did not promote the Complainant. There is No Probable Cause to substantiate Complainant's allegations of discrimination based on his National Origin or Retaliation for filing a previous complaint.

*Id.* Ex. 28. On November 15, 1991, the EEOC issued a determination concluding "the evidence obtained during the [SDHR] investigation does not establish violations of the statutes." *Id.* Ex. 29, at 1. The EEOC determination advised Mendoza of his right to sue within 90 days.

According to the Complaint, Mendoza has been unable to find work since his discharge from Lintas. The Complaint states that he has been "forced to state to prospective employers that he was terminated," implying that he has been less than a satisfactory employee. Finally, the Complaint alleges that Lintas interfered with Mendoza's employment with another advertising firm.

*Discussion*

### 1. Preclusive Effect of SDHR Proceedings

Counts III and V of the Complaint charge that, in violation of § 1981,[1] Lintas failed to promote or grant Mendoza raises on the basis of national origin discrimination and retaliation for filing the SDHR Complaint. Lintas moves for summary judgment dismissing these claims on the grounds that they are precluded by the prior SDHR proceedings under the doctrine of *res judicata.*

■ The standards for summary judgment are well-known. The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. In order to create a genuine factual issue, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). This is particularly true for those issues on which the non-moving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of fact exists, the court must draw all permissible inferences in favor of the nonmoving party. *Branum v. Clark,* 927 F.2d 698 (2d Cir. 1991).

■ With respect to employment discrimination claims under § 1981,

> when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.[2]

*University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Constr. & Min. Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)); *cf. Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (federal courts must "give preclusive effect of state-court

---

**1.** Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,

penalties, taxes, licenses, and exactions of every kind, and to no other.

**2.** Unreviewed state administrative proceedings do not have preclusive effect with respect to claims brought under Title VII, however. *See University of Tennessee v. Elliott,* 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986).

judgments whenever the courts of the State from which the judgments emerged would do so"); 28 U.S.C. § 1738.

■ In New York, "the quasi-judicial determinations of administrative agencies" will be accorded preclusive effect "when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825–26, 467 N.E.2d 487, 489–90 (1984) (citations omitted).[3]

■ Before examining whether New York courts would treat the findings of the SDHR as preclusive of Mendoza's § 1981 claims, it is worthwhile to note that there are two species of preclusion rules. First, under the doctrine of *res judicata,* or "claim preclusion," a final judgment on the merits precludes the parties or those in privity with them from relitigating claims that were or could have been raised in the prior action. *See Fay v. South Colonie Cent. School Dist.*, 802 F.2d 21, 18 (2d Cir.1986). Under New York's "transactional approach," if claims in a later action arise out of the same "factual grouping" that formed the predicate for the prior proceeding, they are deemed part of the same "claim" and will be barred irrespective of whether they are based upon different legal theories or seek different relief. *See Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986) (citing New York cases).

■ Under the narrower doctrine of collateral estoppel, or "issue preclusion," relitigation of issues identical to those raised and necessarily decided in a prior proceeding on a different claim is precluded. *See, e.g., Ryan,* 62 N.Y.2d at 500, 478 N.Y.S.2d 823, 467 N.E.2d 487. For collat-

eral estoppel to apply, the issue in question must have been "material to the first action or proceeding and essential to the decision rendered therein and [is] the point actually to be determined in the second action or proceeding such that 'a different judgment in the second would destroy or impair the rights or interests established by the first.' " *Id.* at 500–01, 478 N.Y.S.2d 823, 467 N.E.2d 487 (citations omitted). Moreover, "the party against whom preclusion is sought [must have] been accorded a full and fair opportunity to contest the issue [in the prior proceeding]." *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276, 532 N.Y.S.2d 230, 232, 528 N.E.2d 153, 155 (1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).

■ The phrasing of the present motion illustrates the common tendency to confuse and interchange the two doctrines. While Lintas's motion is styled as one based on *res judicata,* it is at the same time peppered with arguments more apropos of (and often explicitly in the name of) collateral estoppel. Similarly, Mendoza's opposition treats the motion as one based on collateral estoppel. In this particular case, however, the distinction is actually of little or no importance because the basis of Mendoza's opposition to Lintas's motion is that he did not have a "full and fair opportunity to litigate" his discrimination and retaliation claims in the SDHR proceedings, an essential element of both doctrines. In other words, Mendoza does not contest that the present claims arise out of the same "factual grouping" as those brought before the SDHR (*res judicata* ) or that the discrimination and retaliation issues underlying the § 1981 claims are identical to those actually determined by the SDHR and essential to its determination of no probable

---

**3.** It bears noting that, under New York law, a person claiming to be aggrieved by unlawful discriminatory practices must "elect to seek redress in either an administrative or a judicial forum." *Marine Midland Bank, N.A. v. New York State Div. of Human Rights,* 75 N.Y.2d 240, 244, 552 N.Y.S.2d 65, 551 N.E.2d 558 (1989) (citing N.Y.Exec.L. § 297(9)). Given this statutory mandate for election of remedies, "once a complainant elects the administrative forum by

filing a complaint with the Division of Human Rights, a subsequent judicial action on the same complaint is generally barred." *Id.* at 245, 552 N.Y.S.2d 65, 551 N.E.2d 558. The sole exception to this rule is that when a complaint before the SDHR is dismissed for "administrative convenience" the complainant retains the right to bring a judicial action in state court. *See id.; Emil v. Dewey,* 49 N.Y.2d 968, 969, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980).

cause (collateral estoppel).[4] Mendoza also does not argue that the SDHR was acting pursuant to its "adjudicatory authority" and employed "procedures substantially similar to those used in a court of law." See Ryan, 62 N.Y.2d at 499, 478 N.Y.S.2d 823, 467 N.E.2d 487.[5]

■ Thus, the sole issue to be determined on this motion is whether Mendoza had a "full and fair opportunity to litigate" his claims/issues of discrimination and retaliation in the SDHR proceedings. As the party opposing preclusion, Mendoza bears the burden of establishing that he did not have such an opportunity. See Choi v. State, 74 N.Y.2d 933, 936, 550 N.Y.S.2d 267, 549 N.E.2d 469 (1989); Ryan, 62 N.Y.2d at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487.

■ In determining whether the party against whom preclusion is sought was afforded a "full and fair opportunity to litigate" in the administrative proceeding, a court must consider the " 'realities of the [prior] litigation,' including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." Ryan, 62 N.Y.2d at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487 (citations omitted). Relevant, for example is the nature of the prior forum, the importance of the issue or claim in the prior proceeding, the party's incentive and initiative to litigate the issue or claim, the competence and expertise of counsel, the availability of new evidence, the difference in the applicable law and the foreseeability of future litigation. Id.

Applying these principles to the record presently before the court, there is no genuine question as to whether Mendoza had a full and fair opportunity to litigate his discrimination and retaliation claims in the SDHR proceedings. The SDHR conducted an adversarial hearing at which Mendoza testified and cross-examined Lintas's witnesses. The SDHR subpoenaed witnesses on Mendoza's behalf, including Weiss, who supplied written responses to the SDHR's questions. Mendoza submitted voluminous documentary evidence on his behalf and was given and took the opportunity to respond to Lintas's submissions. The SDHR took Mendoza's claims under consideration for over three years, during which time it received numerous supplemental submissions from Mendoza and acted upon Mendo-

---

4. Even if Mendoza were to contest these elements, the facts on this record would negate such a challenge. With respect to the elements of res judicata, the facts upon which the § 1981 claims are based match those underlying the SDHR claims essentially to the letter. Moreover, the present claim of discrimination and retaliation is precisely that which was considered by the SDHR. With respect to collateral estoppel, the elements of identicality and decisiveness are both satisfied. The critical issue before the SDHR, as here, was whether Lintas's failure to promote or consider Mendoza for raises was based on national origin discrimination and/or retaliation. The SDHR's finding that Lintas had not engaged in discriminatory or retaliatory practices but that its actions vis a vis Mendoza were based on its assessment of his performance was decisive of its conclusion that there was no probable cause to find a violation of the statutes.

5. Even if Mendoza had posed such a challenge, these questions resolve in favor of Lintas. The SDHR has adjudicatory authority over questions of discrimination. The New York Human Rights Law provides that the SDHR has the power

6. (a) To receive, investigate and pass upon complaints alleging violations of this article.
. . . .
7. To hold hearings, to provide where appropriate for cross-interrogatories, subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person under oath, and in connection therewith, to require the production for examination of any books or papers relating to any matter under investigation or in question before the division.

N.Y.Exec.L. § 295(6) & (7) (McKinney's 1982); see also Hill v. Coca Cola Bottling Co., 786 F.2d 550, 554 (2d Cir.1986) (SDHR is New York agency having jurisdiction over discrimination complaints).

Furthermore, the SDHR's procedures, though informal, satisfy the requirement of "substantial similar[ity] to those used in a court of law." See, e.g., DeCintio v. Westchester Cty. Med. Ctr., 821 F.2d 111, 117–18 (2d Cir.), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); Ibrahim v. New York State Dep't of Health, 692 F.Supp. 1471, 1473 (E.D.N.Y.1988) ("The informal nature of SDHR's investigatory and adjudicatory procedure does not prevent SDHR determinations from having preclusive effect.").

za's requests that it seek further information and documents from Lintas.

Mendoza maintains that he was deprived of a full and fair opportunity to litigate the discrimination and retaliation claims/issues because (1) he was not represented by counsel during the SDHR proceedings; (2) the SDHR did not subpoena Millar and Shallette so that he could cross-examine them; and (3) the SDHR failed to schedule a follow-up conference. In view of the other facts, these circumstances do not render Mendoza's opportunity less than "full and fair."

With respect to the first point, the fact that Mendoza chose not to be represented by counsel in the face of notice by the SDHR that "[y]ou may bring an attorney if you so desire," Mendoza Aff.Ex. E, does not impugn the process he received before the SDHR. *See DeCintio*, 821 F.2d at 116 (plaintiff had full and fair opportunity to litigate even though "he appears not to have availed himself significantly of that opportunity"); *Ibrahim*, 692 F.Supp. at 1473 (plaintiff's *pro se* status did not render administrative proceeding less than full and fair opportunity to litigate claims); *cf. Magini v. Otnorp Ltd.*, 180 A.D.2d 476, 579 N.Y.S.2d 669 (App.Div. 1st Dep't 1992) (election of administrative remedy for discrimination grievance binding on plaintiff even though uneducated and unrepresented by counsel).

With respect to the second point, given the extensive nature of Mendoza's participation in the process, his voluminous submissions and numerous and detailed responses to Lintas's arguments and evidence, Spriggs's failure to subpoena Shallette and Millar is not fatal. *See Kirkland v. Peekskill*, 828 F.2d 104, 108–09 (2d Cir. 1987) ("[D]uring its investigation of Kirkland's three complaints the NYSDHR received sworn statements on his behalf, took testimony from Kirkland while he was accompanied by counsel, contacted *a number of his suggested witnesses....*" (emphasis added)); *Ward v. Harte*, 794 F.Supp. 109 (S.D.N.Y.1992) (Fair Housing Board's exclusion of two witnesses for defendant, limitation of defendant's counsel's cross-exam-

ination and alleged bias of panel does not render administrative proceeding less than full and fair in light of fact that defendant testified on his own behalf, cross-examined witnesses and introduced items into evidence).

Finally, in view of the extensive nature of the proceedings, the SDHR's failure to conduct a follow-up conference is not material. *Cf. Ibrahim*, 692 F.Supp. at 1473 (informal nature of SDHR investigatory and adjudicatory procedure does not prevent preclusive effect). In fact, the sole matter of business Mendoza seems to feel was left to be addressed was the testimony of Weiss, a witness in Mendoza's behalf. However, as noted above, Weiss fully answered in writing each of the questions posed to him by the SDHR at Mendoza's request.

Based on the foregoing analysis, Claims III and V, Mendoza's § 1981 claims, are precluded by the prior SDHR proceedings under New York preclusion rules.

### 2. Libel Claim

Claim II of the Complaint charges that:

The fact that plaintiff was forced to state that he was terminated although said termination was retaliatory and discriminatory, to prospective employers, and that said statement placed the plaintiff in an unsatisfactory light in order to obtain new employment, *and* based on this reality, the plaintiff did not get said employment, the defendant has been forced to self-libel himself, and as a result, the plaintiff has suffered damages.

Lintas moves to dismiss this claim for failure to state a claim on the grounds that (1) New York does not recognize a cause of action for "self-libel"; (2) even if New York did recognize such a claim, the statement that plaintiff was terminated is not libelous since it is true; (3) Mendoza's claim would be deficient even in those states that do recognize self-libel as a cause of action; and (4) the SDHR and EEOC findings of no probable cause preclude the self-libel claim.

 It is well-settled that under New York law, there can be no defamation

without publication. *Church of Scientology, Inc. v. Green,* 354 F.Supp. 800, 803 (S.D.N.Y.1973). The general rule is that, if the person claiming to be defamed communicates the allegedly defamatory statements to another, no liability for any resulting damage is incurred by the originator of the statements. *See J. Crew Group, Inc. v. Griffin,* No. 90 Civ. 2663 (KC), slip op., 1990 WL 193918 (S.D.N.Y. Nov. 27, 1990) (citing New York cases). Thus, there is ordinarily "no publication if the defamatory statement is exposed to a third party by the person claiming to be defamed." *Burger v. Health Ins. Plan,* 684 F.Supp. 46, 52 (S.D.N.Y.1988).

Mendoza has cited a number of cases from other jurisdictions which have adopted the "self-publication" exception which provides that under certain circumstances the originator of an allegedly defamatory statement may be held liable for the plaintiff's own republication of the statement. *See, e.g., McKinney v. County of Santa Clara,* 110 Cal.App.3d 787, 168 Cal.Rptr. 89 (1st Dist.1980); *Colonial Stores, Inc. v. Barrett,* 73 Ga.App. 839, 38 S.E.2d 306 (1946); *Grist v. Upjohn Co.,* 16 Mich.App. 452, 168 N.W.2d 389 (1969); *Lewis v. The Equitable Life Assurance Soc. of the United States,* 389 N.W.2d 876 (Minn.1986). However, he has not cited, and independent research has failed to uncover, any New York State court case recognizing this exception. Indeed, faced with this question, several courts within this district have avoided deciding "this important matter of state public policy" in the absence of an initial state court consideration. *See J. Crew,* slip op. at 12 (unnecessary to decide question); *Burger,* 684 F.Supp. at 52 ("A federal court should not decide, in the first instance, this important matter of state policy."); *Mandelblatt v. Perelman,* 683 F.Supp. 379, 386 (S.D.N.Y. 1988) (unnecessary to decide which version of "self-publication" rule accords with New York law).

■ As held in *Burger,* 684 F.Supp. at 52, it would be inappropriate to decide whether a cause of action for "self-libel" exists under New York law in the absence of any indication by New York's courts on this matter. Moreover, even if the court were to accept Mendoza's invitation to adopt a rule similar to that applied in states that do recognize this cause of action, the Complaint would fail to state a claim upon which relief can be granted because the Complaint on its face fails to allege a defamatory statement.

First, the statement that Mendoza was terminated from his position at Lintas is true and is therefore not defamatory. *See Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 489, 95 S.Ct. 1029, 1043, 43 L.Ed.2d 328 (1975) (true statement cannot be defamatory). Nowhere in the Complaint does Mendoza allege that he has been forced to disclose to potential employers that he was terminated because of his performance. *See* Comp. ¶ 17 ("plaintiff is forced to state to prospective employers that he was terminated...."). In fact, the Complaint actually negates the inference that such a disclosure would even be necessary in the interest of honesty. *See id.* ¶ 15 ("In or about August 1989, the plaintiff was unilaterally terminated from his job. *There was no reason given for his termination.*" (emphasis added)).

Second, even if Mendoza were forced to disclose to employers that he was terminated because of his performance, the findings of the SDHR preclude a finding that such a statement is defamatory under the doctrine of collateral estoppel. *Compare Ryan,* 62 N.Y.2d at 503, 478 N.Y.S.2d 823, 467 N.E.2d 487 (cause of action in slander based on defendant's remark that plaintiff "stole something" from his workplace collaterally estopped be administrative finding that plaintiff was seen "removing company property from the company premises" and that taking was "without authorization").

*Conclusion*

Based on the foregoing analysis, Lintas's motion for summary judgment dismissing Counts III and V of the Complaint is granted as is its motion to dismiss Count II for failure to state a claim upon which relief can be granted.

It is so ordered.